http://www.va.gov/vetapp16/Files6/1644969.txt

Citation Nr: 1644969 
Decision Date: 11/30/16 Archive Date: 12/09/16

DOCKET NO. 09-28 725 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Waco, Texas

THE ISSUES

1. Entitlement to service connection for gastroesophageal reflux disease (GERD), to include as due to drinking contaminated water at Camp Lejeune.

2. Entitlement to a disability rating in excess of 40 percent for a low back disability.

3. Entitlement to a disability rating in excess of 10 percent for radiculopathy of the right lower extremity.

4. Entitlement to a total disability rating based on individual unemployability (TDIU) due to service-connected disabilities.

REPRESENTATION

Appellant represented by: Virginia A. Girard-Brady

ATTORNEY FOR THE BOARD

T. Douglas, Counsel

INTRODUCTION

The appellant is a Veteran who served on active duty from July 1979 to July 1982. 

These matters come before the Board of Veterans' Appeals (Board) on appeal from rating decisions in August 2012 and August 2013 by the Waco, Texas, and Louisville, Kentucky, Regional Offices (RO) of the Department of Veterans Affairs (VA). The TDIU issue arose from a January 2011 Board decision that bifurcated the issue and remanded it for additional development. The issue was re-adjudicated in August 2012. In March 2016, the United States Court of Appeals for Veterans Claims (hereinafter "the Court") affirmed the Board's November 2014 denial of entitlement to a disability rating in excess of 30 percent for migraine headaches. The issues remaining on appeal were remanded by the Board for further development in November 2014.

FINDINGS OF FACT

1. GERD was not present during active service; and, the preponderance of the evidence fails to establish that it is etiologically related to service to include as due to drinking contaminated water at Camp Lejeune.

2. The Veteran's lumbar disc disease and degenerative arthritis status post hemilaminectomy is not manifested by unfavorable ankylosis of the entire thoracolumbar spine nor incapacitating episodes having a total duration of at least six weeks during any 12 month period.

3. The Veteran's radiculopathy of the right lower extremity is manifested by no more than mild incomplete paralysis of the sciatic nerve.

4. The evidence demonstrates the Veteran's service-connected disabilities do not render him unable to secure and follow a substantially gainful occupation.

CONCLUSIONS OF LAW

1. The criteria for service connection for GERD, to include as due to drinking contaminated water at Camp Lejeune, have not been met. 38 U.S.C.A. § 1131 (West 2014); 38 C.F.R. §§ 3.303 (2015).

2. The criteria for a rating in excess of 40 percent for lumbar disc disease and degenerative arthritis status post hemilaminectomy have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014), 38 C.F.R. §§ 4.1, 4.3, 4.40, 4.45, 4.59, 4.71a, Diagnostic Code 5242 (2015).

3. The criteria for a rating in excess of 10 percent for radiculopathy of the right lower extremity have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014), 38 C.F.R. §§ 4.1, 4.3, 4.71a, Diagnostic Code 8520 (2015).

4. The criteria for entitlement to a TDIU are not met. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. §§ 3.340, 4.16(b) (2015).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2015). 

The duty to notify has been met. See VA correspondence dated in January 2013. Neither the Veteran, nor his attorney, has alleged prejudice with regard to notice. The Federal Court of Appeals has held that "absent extraordinary circumstances...it is appropriate for the Board and the Veterans Court to address only those procedural arguments specifically raised by the veteran...." See Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015). In light of the foregoing, nothing more is required.

As for the duty to assist, all identified and authorized records relevant to the matters have been requested or obtained. The available record includes service treatment records, VA treatment and examination reports, non-VA (private) treatment records, VA vocational rehabilitation records, Social Security Administration (SSA) records, and statements in support of the claims. The development requested on remand has been substantially completed. Although VA treatment records dated in December 2014 noted the Veteran had indicated a willingness to undergo nerve conduction studies, there is no indication that such testing was subsequently performed. There is no evidence of any additional existing pertinent records. In fact, in a January 27, 2015, statement the Veteran reported that he had no other evidence to give VA to support his claims. 

When VA undertakes to provide a VA examination or obtain a VA opinion it must ensure that the examination or opinion is adequate. VA medical opinions obtained in this case are adequate as they are predicated on a substantial review of the record and medical findings and consider the Veteran's complaints and symptoms. Accordingly, the Board finds that VA's duty to assist with respect to obtaining a VA examination or opinion has been met. 38 C.F.R. § 3.159(c)(4). The available medical evidence is sufficient for adequate determinations. There has been substantial compliance with all pertinent VA law and regulations and to adjudicate the claims would not cause any prejudice to the appellant.

Service Connection Claim

Under the relevant laws and regulations, service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C.A. § 1131 (West 2014). 

Generally, the evidence must show: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163, 1166-67 (Fed. Cir. 2004). In order to prevail on the issue of entitlement to secondary service connection, there must be (1) evidence of a current disability; (2) evidence of a service-connected disability; and (3) nexus evidence establishing a connection between the service-connected disability and the current disability. See Wallin v. West, 11 Vet. App. 509, 512 (1998).

Certain chronic diseases are subject to presumptive service connection if manifest to a compensable degree within one year from separation from service even though there is no evidence of such disease during the period of service. This presumption is rebuttable by affirmative evidence to the contrary. 38 U.S.C.A. §§ 1112, 1113 (West 2014); 38 C.F.R. §§ 3.307(a)(3), 3.309(a) (2015). 

Under 38 C.F.R. § 3.303(b), an alternative method of establishing the second and third Shedden/Caluza element is through a demonstration of continuity of symptomatology if the disability claimed qualifies as a chronic disease listed in 38 C.F.R. § 3.309(a). GERD is not a qualifying chronic disease. See Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). As a result, service connection via the demonstration of continuity of symptomatology is not applicable in the present case.

The National Academy of Sciences' National Research Council (NRC) published Contaminated Water Supplies at Camp Lejeune, Assessing Potential Health Effects, in 2009. This report included a review of studies addressing exposure to Trichloroethylene (TCE), and Tetrachloroethylene or Perchloroethylene (PCE), as well as a mixture of the two, and a discussion of disease manifestations potentially associated with such exposure. Fourteen disease conditions were identified as having limited/suggestive evidence of an association with TCE, PCE, or a solvent mixture exposure, including esophageal cancer, lung cancer, breast cancer, bladder cancer, kidney cancer, adult leukemia, multiple myeloma, myelodysplastic syndromes, renal toxicity, hepatic steatosis, female infertility, miscarriage with exposure during pregnancy, scleroderma, and neurobehavioral effects. See M21-1, IV.ii.1.I.15.1.a. 

VA has proposed amending regulations, 38 C.F.R. §§ 3.307, 3.309, to allow presumptive service connection for certain diseases associated with exposure to contaminants in the water supply at Camp Lejeune. Generally, it is proposed that if a veteran, or former reservist or member of the National Guard, who had no less than 30 days (consecutive or nonconsecutive) of service at Camp Lejeune during the period beginning on August 1, 1953, and ending on December 31, 1987, shall be presumed to have been exposed during such service to the contaminants in the water supply, unless there is affirmative evidence to establish that the individual was not exposed to contaminants in the water supply during that service. Kidney cancer, liver cancer, non-Hodgkin's lymphoma, adult leukemia, multiple myeloma, Parkinson's disease, aplastic anemia and other myelodysplastic syndromes, and bladder cancer shall be service-connected even though there is no record of such disease during service. See 81 Fed. Reg. 62419-01 (Sep. 8, 2016).

Even though a disease is not included on the list of presumptive diseases, a nexus between the disease and service may nevertheless be established on the basis of direct service connection. Stefl v. Nicholson, 21 Vet. App. 120 (2007). When a claimed disability is not included as a presumptive disability, direct service connection may nevertheless be established by evidence demonstrating that the disability was in fact incurred during service. Combee v. Brown, 34 F.3d 1039 (Fed. Cir. 1994).

The Veteran contends that he has GERD as a result of active service, to include as a result of benzene exposure or contaminated water exposure while he was stationed at Camp Lejeune. In support of his claim he provided copies of internet source material, including from the Agency for Toxic Substances and Disease Registry (ATSDR), indicating a link between benzene exposure and vomiting and irritation of the stomach. In a January 2013 statement the Veteran's mother recalled that he had experienced episodes of vomiting since his discharge from active service. His spouse recalled that he had experienced problems with regurgitation over the 20 years she had known him. 

Service treatment records show the Veteran was treated for acute abdominal pain of unknown etiology with resolving symptoms upon follow-up in February 1981. Clinical evaluation of his abdomen and viscera was normal in July 1982. 

A January 2016 VA medical opinion found the Veteran's claimed condition was less likely incurred in or caused by the claimed in-service injury, event or illness. It was noted he was given a working diagnosis of GERD by his primary care physicians in 2012, but that upper gastrointestinal series and endoscopy had not shown evidence of GERD. A diagnosis of rumination syndrome ( a motility disorder causing regurgitation) had also been entertained, but not confirmed. The examiner noted that records showed the Veteran was stationed at Camp Lejeune from October 19, 1979, to November 27, 1979, and from January 6, 1980, to July 23, 1980. The service treatment records, including the February 1981 treatment report, and post-service medical records were reviewed and found not to show a diagnosis or treatment for GERD or ruminative disorder complaints. The examiner found the records did not support the Veteran's or his mother's contentions of symptoms since discharge from service. A review of the medical literature, did not show an association between exposure to contaminated water at Camp Lejeune, including benzene, and the development of either GERD or rumination syndrome. It was further noted that while the ATSDR report noted gastrointestinal symptoms of vomiting and irritation of the stomach from acute ingestion of high levels of benzene, it did not note an association between a previous history of exposure and the development of symptoms of vomiting and/or irritation of the stomach at a later time.

Based upon the evidence of record, the Board finds that GERD was not present during active service and the persuasive medical evidence demonstrates that it was neither incurred nor caused by an in-service injury, event, or illness. Records show the Veteran served at Camp Lejeune in 1980 and that he has been provided a diagnosis of GERD and rumination syndrome. These disorders, however, are not shown to be associated with exposure to contaminants in the water supply at Camp Lejeune. Neither the proposed regulation or the cited NRC report links the development of GERD to contaminated water at Camp Lejeune. The January 2016 VA medical opinion is persuasive and based upon adequate rationale. The examiner is shown to have reviewed the evidence of record and to have adequately considered applicable medical literature, credible lay statements, and the reported symptom manifestation history of record. See Dalton v. Nicholson, 21 Vet. App. 23 (2007). 

Consideration has also been given to the lay assertions that the Veteran has GERD as a result a service or gastrointestinal symptoms that have continued since service. However, while lay persons are competent to provide opinions on some medical issues, see Kahana v. Shinseki, 24 Vet. App. 428, 435 (2011), the specific issue in this case falls outside the realm of common knowledge of a lay person. See Jandreau v. Nicholson, 492 F.3d 1372, 1377 n.4 (Fed. Cir. 2007). Chronicity of gastrointestinal symptoms and causation are complex medical matters and are not amenable to probative lay comment regarding etiology. See Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009); Woehlaert v. Nicholson, 21 Vet. App. 456, 462 (2007). 

The Board acknowledges that the Veteran is competent to report observable symptoms, but there is no indication that he is competent to etiologically link any such symptoms to a current diagnosis. He is not shown to possess the requisite medical training, expertise, or credentials needed to render a diagnosis or a competent opinion as to medical causation. Nothing in the record demonstrates that he received any special training or acquired any medical expertise in evaluating such disorders. See King v. Shinseki, 700 F.3d 1339, 1345 (Fed. Cir. 2012). Accordingly, the lay evidence does not constitute competent medical evidence and lacks probative value. The lay opinions are also outweighed by the existing medical evidence of record. Therefore, the appellant's claim for entitlement to service connection for GERD must be denied.

When all the evidence is assembled VA is then responsible for determining whether the evidence supports the claim or is in relative equipoise, with the claimant prevailing in either event, or whether a preponderance of the evidence is against the claim in which case the claim is denied. Gilbert v. Derwinski, 1 Vet. App. 49, 55 (1990); Ortiz v. Principi, 274 F.3d 1361 (Fed. Cir. 2001). The preponderance of the evidence is against the claim.

Increased Rating Claims

Disability evaluations are determined by the application of VA's Schedule for Rating Disabilities (Rating Schedule), 38 C.F.R. Part 4. This Rating Schedule is primarily a guide in the evaluation of disability resulting from all types of diseases and injuries encountered as a result of or incident to military service. The percentage ratings represent as far as can practicably be determined the average impairment in earning capacity resulting from such diseases and injuries and their residual conditions in civil occupations. Generally, the degrees of disability specified are considered adequate to compensate for considerable loss of working time from exacerbations or illnesses proportionate to the severity of the several grades of disability. For the application of this schedule, accurate and fully descriptive medical examinations are required, with emphasis upon the limitation of activity imposed by the disabling condition. Over a period of many years, a veteran's disability claim may require reratings in accordance with changes in laws, medical knowledge and his or her physical or mental condition. It is essential, both in the examination and in the evaluation of disability, that each disability be viewed in relation to its history. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. § 4.1 (2015).

The Board will consider entitlement to staged ratings to compensate for times since filing the claim when the disability may have been more severe than at other times during the course of the claim on appeal. Fenderson v. West, 12 Vet. App. 119 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2007).

It is the responsibility of the rating specialist to interpret reports of examination in the light of the whole recorded history, reconciling the various reports into a consistent picture so that the current rating may accurately reflect the elements of disability present. 38 C.F.R. § 4.2 (2015). Consideration of factors wholly outside the rating criteria constitutes error as a matter of law. Massey v. Brown, 7 Vet. App. 204, 207-08 (1994). Under VA law disabilities may be rated separately without violating the prohibition against pyramiding under 38 C.F.R. § 4.14, unless the disorder constitutes the same disability or symptom manifestations. See Esteban v. Brown, 6 Vet. App. 259, 261 (1994). 

Disability of the musculoskeletal system is primarily the inability, due to damage or infection in parts of the system, to perform the normal working movements of the body with normal excursion, strength, speed, coordination, and endurance. 38 C.F.R. § 4.40 (2015). Functional loss may be due to pain, supported by adequate pathology and evidenced by the visible behavior in undertaking the motion. Id.; see also 38 C.F.R. § 4.59 (2015) (discussing facial expressions such as wincing, muscle spasm, crepitation, etc.). Weakness is as important as limitation of motion, and a part that becomes painful on use must be regarded as seriously disabled. Id. Excess fatigability and incoordination should be taken into account in addition to more movement than normal, less movement than normal, and weakened movement. 38 C.F.R. § 4.45 (2015).

Consideration of a higher rating for functional loss, to include during flare ups, due to these factors accordingly is warranted for Diagnostic Codes predicated on limitation of motion. 38 C.F.R. §§ 4.40 , 4.45, 4.59; DeLuca v. Brown, 8 Vet. App. 202 (1995). Pain itself does not constitute functional loss, and painful motion does not constitute limited motion for the purposes of rating under Diagnostic Codes pertaining to limitation of motion. Mitchell v. Shinseki, 25 Vet. App. 32 (2011). Pain indeed must affect the ability to perform normal working movements with normal excursion, strength, speed, coordination, or endurance in order to constitute functional loss. Id.

Traumatic arthritis is rated pursuant to the criteria found in Diagnostic Codes 5010, which directs that evaluations are to be made pursuant to the criteria for degenerative arthritis found in Diagnostic Code 5003. 38 C.F.R. § 4.71a (2015). Degenerative arthritis established by X-ray findings will be rated on the basis of limitation of motion under the appropriate diagnostic codes for the specific joint or joints involved. When the limitation of motion of the specific joint or joints involved is noncompensable under the appropriate diagnostic codes, a rating of 10 percent is for application for each such major joint or group of minor joints affected by limitation of motion, to be combined, not added under Diagnostic Code 5003. Limitation of motion must be objectively confirmed by findings such as swelling, muscle spasm, or satisfactory evidence of painful motion. In the absence of limitation of motion, a 10 percent rating is warranted with X-ray evidence of involvement of two or more major joints or two or more minor joint groups, and a 20 percent rating is warranted with X-ray evidence of involvement of two or more major joints or two or more minor joint groups, with occasional incapacitating exacerbations. The 20 percent and 10 percent ratings based on X-ray findings will not be combined with ratings based on limitation of motion. 38 C.F.R. § 4.71a, Diagnostic Code 5003, Note (1) (2015).

Disabilities of the spine, including those rated under Diagnostic Code 5242, are rated under the General Rating Formula for Diseases and Injuries of the Spine. 38 C.F.R. § 4.71a (2013). The General Rating Formula for rating Diseases and Injuries of the Spine provides a 100 percent rating for unfavorable ankylosis of the entire spine. A 50 percent rating is warranted for unfavorable ankylosis of the entire thoracolumbar spine. A 40 percent rating is warranted for forward flexion of the thoracolumbar spine to 30 degrees or less, or with favorable ankylosis of the entire thoracolumbar spine. 38 C.F.R. § 4.71a, General Rating Formula for Diseases and Injuries of the Spine.

When rating diseases and injuries of the spine, any associated objective neurological abnormalities, including, but not limited to, bowel or bladder impairment, should be rated separately, under an appropriate diagnostic code. 38 C.F.R. § 4.71a, General Rating Formula for Diseases and Injuries of the Spine, Note (1) (2013). For VA compensation purposes, normal forward flexion of the thoracolumbar spine is 0 to 90 degrees, extension is 0 to 30 degrees, left and right lateral flexion are 0 to 30 degrees, and left and right lateral rotation are 0 to 30 degrees. Normal combined range of motion of the thoracolumbar spine is 240 degrees. Normal ranges of motion for each component of spinal motion provided are the maximum usable for calculating the combined range of motion. 38 C.F.R. § 4.71a, Plate V, General Rating Formula for Diseases and Injuries of the Spine, Note 2 (2015).

The rating criteria for intervertebral disc syndrome require rating of the disability either on the total duration of incapacitating episodes resulting from intervertebral disc syndrome over the past 12 months, or by combining under 38 C.F.R. § 4.25 separate ratings of its chronic orthopedic and neurologic manifestations with rating for all other disabilities, whichever method results in the higher rating. A 40 percent rating is warranted for intervertebral disc syndrome with incapacitating episodes having a total duration of least four weeks but less than six weeks during the past 12 months. A 60 percent rating is warranted for intervertebral disc syndrome with incapacitating episodes having a total duration of at least six weeks during the past 12 months. An incapacitating episode is a period of acute signs and symptoms due to intervertebral disc syndrome that requires bed rest prescribed by a physician and treatment by a physician. 38 C.F.R. § 4.71a, Diagnostic Code 5243, Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes. 

The regulations also provide for separate ratings for chronic orthopedic and neurological manifestations of intervertebral disc syndrome. Incomplete paralysis indicates a degree of lost or impaired function substantially less than the type picture for complete paralysis given with each nerve, whether due to varied level of the nerve lesion or to partial regeneration. When the involvement is wholly sensory, the rating should be for mild, or at most, moderate degree. 38 C.F.R. § 4.124a (2015). 

The rating criteria for sciatic nerve disabilities provide an 80 percent rating for complete paralysis of the sciatic nerve with the foot dangles and drops, no active movement possible of muscles below the knee, flexion of knee weakened or (very rarely) lost. A 60 percent rating is provided for incomplete paralysis that is severe, with marked muscular atrophy. A 40 percent rating is provided for incomplete paralysis that is moderately severe. A 20 percent rating is provided for incomplete paralysis that is moderate. A 10 percent rating is provided for incomplete paralysis that is mild. 38 C.F.R. § 4.124a, Diagnostic Code 8520 (2015). 

It is the policy of VA to administer the law under a broad interpretation, consistent with the facts in each case with all reasonable doubt to be resolved in favor of the claimant. However, the reasonable doubt rule is not a means for reconciling actual conflict or a contradiction in the evidence. 38 C.F.R. § 4.3 (2015).

In this case, the Veteran contends that his service-connected lumbar disc disease and degenerative arthritis status post hemilaminectomy is more severely disabling than indicated by the present evaluation. In a January 2013 statement in support of the claim his spouse reported that his back was getting worse and that sometimes he was unable to get out of bed. She said he complained about numbness in his legs and feet. 

VA examination in July 2013 included a diagnosis of lumbar disc disease and degenerative arthritis status post hemilaminectomy with right radiculopathy. It was noted the Veteran complained of constant low back pain with intermittent right lower extremity pain and numbness. He denied any flare-ups that impacted the function of the thoracolumbar spine. Range of motion studies revealed forward flexion to 30 degrees, with objective evidence of pain at 10 degrees. Extension was to 0 degrees, with objective evidence of pain at 0 degrees. Right lateral flexion was to 10 degrees, with objective evidence of pain at 5 degrees. Left lateral flexion was to 10 degrees, with objective evidence of pain at 5 degrees. Right lateral rotation was to 20 degrees, with objective evidence of pain at 10 degrees. Left lateral rotation was to 20 degrees, with objective evidence of pain at 20 degrees. Post-repetitive motion testing revealed forward flexion to 30 degrees, extension to 0 degrees, right lateral flexion to 10 degrees, left lateral flexion to 10 degrees, right lateral rotation to 20 degrees, and left lateral rotation to 20 degrees. 

The examiner found there was no additional limitation in range of motion of the thoracolumbar spine (back) following repetitive-use testing, but that there was functional loss and/or functional impairment after repetitive use with contributing factors including less movement than normal, pain on movement, disturbance of locomotion, and interference with sitting, standing, and weight-bearing. Muscle strength and reflexes were normal. Sensation to the lower extremities and straight leg raise testing were normal, but there was mild intermittent pain, paresthesias and/or dysesthesias, and numbness to the right lower extremity. There was no localized tenderness or pain to palpation of the joints and no evidence of guarding or muscle spasm of the thoracolumbar spine. The examiner noted there were no other signs or symptoms of radiculopathy. The nerve involved was identified as the sciatic nerve and the severity was found to be mild. There were no other neurologic abnormalities or findings related to the thoracolumbar spine. The examiner also found the Veteran did not have intervertebral disc syndrome and no evidence of incapacitating episodes was provided. It was noted the disorder did impact his ability to work and found that he would be unable to engage in manual labor that required prolonged standing, walking, or lifting, but that he was capable to engage in sedentary and sitting employment. The report included a May 2012 magnetic resonance imaging (MRI) study noting that, overall, the findings were largely similar to a prior examination from June 2008. There was evidence of a prior left-sided laminectomy of L4 and the postsurgical changes are similar in appearance with the prior examination findings. It was noted there was moderate narrowing of the thecal sac at L3-L4 and mild narrowing at L4-L5, but no definite evidence of neural impingement or displacement.

VA vocational rehabilitation records dated in August 2014 show the Veteran had completed a Chapter 31 education program and had an occupational goal to acquire and maintain entry level employment as a computer network systems operator or related work. A December 2013 report noted his case was in job ready status. A March 2012 report noted the Veteran had provided a copy of his information technology-computer network systems degree.

Inasmuch as the Veteran is already in receipt of a 40 percent schedular rating for his service-connected low back disorder, the only basis for a higher rating under the General Rating Formula for Diseases and Injuries of the Spine is if there is evidence of ankylosis. See Johnston v. Brown, 10 Vet. App. 80 (1997) (if a claimant is already receiving the maximum disability rating available based on symptomatology that includes limitation of motion, it is not necessary to consider whether 38 C.F.R. §§ 4.40 and 4.45 are applicable). The Veteran's disorder is not manifested by unfavorable ankylosis of the entire thoracolumbar spine. VA medical records, in fact, show that the Veteran maintains motion of the thoracolumbar spine. Therefore, the Board finds that the Veteran's lumbar disc disease and degenerative arthritis status post hemilaminectomy is manifested by, at worst, forward flexion of the thoracolumbar spine limited to 10 degrees without evidence of unfavorable ankylosis of the entire thoracolumbar spine. 

The Board further finds that there is no evidence that the Veteran's lumbar disc disease and degenerative arthritis status post hemilaminectomy is manifested by incapacitating episodes, as defined for VA compensation purposes, having a total duration of at least six weeks during any 12 month period. Accordingly, a schedular rating in excess of 40 percent is not warranted.

As to the service-connected radiculopathy of the right lower extremity issue, the Board notes that, pursuant to 38 C.F.R. § 4.124a, Diagnostic Code 8520, the Veteran is presently in receipt of a separate 10 percent rating for radiculopathy of the right lower extremity. It is significant to note that the August 2013 rating decision revised the assigned diagnostic code from 8521 (external popliteal nerve) to 8520 (sciatic nerve) effective from September 6, 2012. There is no evidence of distinct impairment to both the external popliteal and sciatic nerves and the rating under the prior diagnostic code was not established at a point in time as to prohibit a revision. But see Murray v. Shinseki, 24 Vet. App. 420, 427 (2011). The Board finds that the revised diagnostic code designation is appropriate based upon the available medical evidence. See Butts v. Brown, 5 Vet. App. 532, 539 (1993) (holding that the Board's choice of diagnostic code should be upheld so long as it is supported by explanation and evidence). 

The July 2013 VA examination specifically found the Veteran's sensation to the lower extremities and straight leg raise testing were normal, but that there was mild intermittent pain, paresthesias and/or dysesthesias, and numbness to the right lower extremity. There were no other signs or symptoms of radiculopathy. The nerve involved was identified as the sciatic nerve and the examiner further found the severity of the impairment to be mild. Therefore, the Board finds the Veteran's radiculopathy of the right lower extremity is manifested by no more than mild incomplete paralysis of the sciatic nerve. 

The Board acknowledges that the Veteran and his spouse are competent to report symptoms of back and lower extremity disabilities. See Barr v. Nicholson, 21 Vet. App. 303 (2007); Jandreau v. Nicholson, 492 F. 3d 1372, 1377 (Fed. Cir. 2007); Layno v. Brown, 6 Vet. App. 465 (1994). They are not, however, competent to identify a specific level of disability nor to diagnose additional or secondary disabilities. Such competent evidence concerning the nature and extent of the Veteran's service-connected low back and right lower extremity disabilities has been provided by VA medical professionals who examined him. The medical findings adequately address the criteria under which this disability is evaluated. The Board accords the objective medical findings greater weight than subjective complaints of increased symptomatology. See Cartwright v. Derwinski, 2 Vet. App. 24, 25 (1991). 

The Board has not overlooked the fact that the Veteran experienced pain. However, pain must affect the ability to perform normal working movements with normal excursion, strength, speed, coordination, or endurance in order to constitute functional loss. See Mitchell v. Shinseki, 25 Vet. App. 32 (2011). Such was addressed in the aforementioned VA examinations. Although the Veteran complained of more severely disabling problems, there is no evidence other than as described herein demonstrating any additional loss of motion or functional loss that affected his ability to perform normal working movements with normal excursion, strength, speed, coordination, or endurance. The assigned ratings adequately represent the Veteran's degree of impairments based upon the overall evidence of record. 

When all the evidence is assembled VA is then responsible for determining whether the evidence supports the claim or is in relative equipoise, with the claimant prevailing in either event, or whether a preponderance of the evidence is against the claim in which case the claim is denied. Gilbert v. Derwinski, 1 Vet. App. 49, 55 (1990); Ortiz v. Principi, 274 F. 3d 1361 (Fed. Cir. 2001). The preponderance of the evidence in this case is against the claims for an increased schedular rating.

Extra-Schedular Rating Consideration

Consideration has also been given to whether the schedular evaluation is inadequate, thus requiring that the RO refer a claim to the Under Secretary for Benefits or the Director, Compensation and Pension Service, for consideration of "an extra-schedular evaluation commensurate with the average earning capacity impairment due exclusively to the service-connected disability or disabilities." 38 C.F.R. § 3.321(b)(1) (2015); Barringer v. Peake, 22 Vet. App. 242, 243-44 (2008) (noting that the issue of an extra-schedular rating is a component of a claim for an increased rating and referral for consideration must be addressed either when raised by the veteran or reasonably raised by the record). Under Johnson v. McDonald, 762 F.3d 1362, 1365-66 (Fed. Cir. 2014), a Veteran may be awarded an extraschedular rating based upon the combined effect of multiple conditions in an exceptional circumstance where the evaluation of the individual conditions fails to capture all the service-connected disabilities experienced. 

In determining whether an extra-schedular evaluation is for consideration, the Board must first consider whether there is an exceptional or unusual disability picture, which occurs where the diagnostic criteria do not reasonably describe or contemplate the severity and symptomatology of a Veteran's service-connected disability. See Thun v. Peake, 22 Vet. App. 111, 115 (2008). If there is an exceptional or unusual disability picture, the Board must next consider whether the disability picture exhibits other factors such as marked interference with employment and frequent periods of hospitalization. Id. at 115-16. When those two elements are met, the appeal must be referred for consideration of the assignment of an extra-schedular rating. Otherwise, the schedular evaluation is adequate, and referral is not required. 38 C.F.R. § 3.321(b)(1) (2015); Thun, 22 Vet. App. at 116.

Service connection is now established for lumbar disc disease and degenerative arthritis status post hemilaminectomy (40 percent); pseudofolliculitis barbae (30 percent); migraine headaches (30 percent); and radiculopathy of the right lower extremity (10 percent). The schedular evaluations in this case are not shown to be inadequate. When comparing the Veteran's disability picture with the symptoms contemplated by the Rating Schedule, the Board finds that based upon available evidence and argument the objective manifestations of the service-connected disabilities are congruent with the disability picture represented by the disability ratings assigned herein. The examiners have clearly noted the Veteran's manifest symptoms and impairments due to these disorders. 

Given the foregoing, the Board concludes that the schedular rating criteria reasonably describe the Veteran's disability picture. In short, there is nothing exceptional or unusual about the Veteran's specific disabilities because the rating criteria reasonably describe his disability level and symptomatology. In this case, after applying the benefit of the doubt under of Mittleider v. West, 11 Vet. App. 181 (1998), there are no additional service-connected disabilities that have not been attributed to a specific service-connected condition. Therefore, referral is not warranted.

TDIU

A total rating for compensation may be assigned where the schedular rating is less than total when it is found that the disabled person is unable to secure or follow a substantially gainful occupation as a result of a single service-connected disability ratable at 60 percent or more or as a result of two or more disabilities, provided at least one disability is ratable at 40 percent or more, and there is sufficient additional service-connected disability to bring the combined rating to 70 percent or more. For the above purpose of one 60 percent disability, or one 40 percent disability in combination, the following will be considered as one disability: (1) Disabilities of one or both upper extremities, or of one or both lower extremities, including the bilateral factor, if applicable, (2) Disabilities resulting from common etiology or a single accident, (3) Disabilities affecting a single body system, e.g. orthopedic, digestive, respiratory, cardiovascular-renal, neuropsychiatric, (4) Multiple injuries incurred in action, or (5) Multiple disabilities incurred as a prisoner of war. It is provided further that the existence or degree of nonservice-connected disabilities or previous unemployability status will be disregarded where the required percentages for the service-connected disability or disabilities are met and in the judgment of the rating agency such service-connected disabilities render the veteran unemployable. Marginal employment shall not be considered substantially gainful employment. For purposes of this section, marginal employment generally shall be deemed to exist when a veteran's earned annual income does not exceed the amount established by the United States Department of Commerce, Bureau of the Census, as the poverty threshold for one person. Marginal employment may also be held to exist, on a facts found basis (includes but is not limited to employment in a protected environment such as a family business or sheltered workshop), when earned annual income exceeds the poverty threshold. 38 C.F.R. § 4.16(a) (2015). 

It is the established policy of VA that all veterans who are unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities shall be rated totally disabled. Rating boards are to refer to the Director of the Compensation Service for extraschedular consideration all cases of veterans who are unemployable by reason of service-connected disabilities but who fail to meet the percentage requirements. 38 C.F.R. § 4.16(b) (2015). 

Total disability will be considered to exist when there is present any impairment of mind or body which is sufficient to render it impossible for the average person to follow a substantially gainful occupation. 38 C.F.R. § 3.340(a) (2015). A Veteran's service-connected disabilities, employment history, educational and vocational attainment, and all other factors having a bearing on the issue must be addressed. Age may not be considered as a factor in evaluating service-connected disability; and unemployability, in service-connected claims, associated with advancing age or intercurrent disability, may not be used as a basis for a total disability rating. 38 C.F.R. § 4.19 (2015).

The sole fact that a claimant is unemployed or has difficulty obtaining employment is not enough. A high rating in itself is a recognition that the impairment makes it difficult to obtain and keep employment. The question is whether the veteran is capable of performing the physical and mental acts required by employment, not whether the veteran can find employment. Van Hoose v. Brown, 4 Vet. App. 361 (1993). 

The applicable regulations place responsibility for the ultimate TDIU determination on the VA, not a medical examiner. Geib v. Shinseki, 733 F.3d 1350, 1354 (Fed. Cir. 2013). TDIU is to be awarded based on the judgment of the rating agency. Floore v. Shinseki, 26 Vet. App. 376, 381 (2013).

As an initial matter, the Board notes that the Veteran meets the schedular criteria for a TDIU rating. See 38 C.F.R. § 4.16(a). He contends that he has been unable to work as a result of his service-connected disabilities. In his March 2011 application for a TDIU he reported that he had completed four years of high school and that he had last worked in June 2003 as a U.S. Postal Service mail carrier. 

A September 2008 SSA determination found the Veteran had the residual functional capacity to lift/carry 10 pounds frequently and 20 pounds occasionally, stand/walk for six hours in an eight-hour workday, and sit six hours in an eight-hour workday. It was noted he would be able to perform his work sitting or standing, but that he would be unable to climb ropes, ladders, or scaffolds and would be unable more than occasionally to climb ramps or stairs or bend, stoop, kneel, crouch, or crawl. It was further noted that a June 2008 medical opinion from R.E.H., PA-C, that the Veteran could not perform even sedentary work due to degenerative disc disease of the lumbar and cervical spines had provided no objective findings that supported the degree of limitation proposed.

VA examination in February 2011 found that the Veteran was obviously unable to engage in his normal employment as a mechanic due to the amount of bending and lifting required for that job. It was noted, however, that he was receiving retraining in computer technology and that he would be able to tolerate sedentary work when his training was completed. The July 2013 VA examiner also found that he would be unable to engage in manual labor that required prolonged standing, walking, or lifting, but that he was capable to engage in sedentary and sitting employment. 

VA vocational rehabilitation records dated in August 2014 show the Veteran had completed a Chapter 31 education program and that he had an occupational goal to acquire and maintain entry level employment as a computer network systems operator or related work. Records show he had obtained a degree in information technology-computer network systems.

Based upon the overall record, the Board finds the evidence demonstrates the Veteran service-connected disabilities do not render him unable to secure and follow a substantially gainful occupation. As noted above, the evidence as to the extent of impairment due to his service-connected lumbar disc disease and degenerative arthritis status post hemilaminectomy and radiculopathy of the right lower extremity disabilities has been considered. There is no indication that the presently assigned ratings for his service-connected pseudofolliculitis barbae and migraine headaches disabilities are inadequate based upon the available evidence. 

While the Veteran is competent to report symptoms believed to be associated with his service-connected disabilities, he is not competent to identify a specific level of disability. Competent evidence concerning the nature and extent of the Veteran's service-connected disabilities have been provided by VA medical professionals who have examined him. The Board accords these objective records greater weight than any subjective complaints of symptomatology. See Cartwright v. Derwinski, 2 Vet. App. 24, 25 (1991). Therefore, entitlement to a TDIU is not warranted.

ORDER

Entitlement to service connection for GERD, to include as due to drinking contaminated water at Camp Lejeune, is denied.

Entitlement to a disability rating in excess of 40 percent for a low back disability is denied.

Entitlement to a disability rating in excess of 10 percent for radiculopathy of the right lower extremity is denied.

Entitlement to a TDIU is denied.

____________________________________________
MICHAEL A. HERMAN
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs